IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

| | |
|---|---|
| **SHEMIKA WILLIAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v.  ) | **Civil Action No. 1:23-00021** |
| ) | |
| **WARDEN RILE,** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 16), filed on May 10, 2023. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by the Defendants in moving to dismiss. (Document No. 20.) Plaintiff failed to file a Response. Having examined the record and considered the applicable law, the undersigned has concluded that the Defendants' Motion (Document No. 16) should be granted.

**PROCEDURAL HISTORY**

On January 25, 2023, Plaintiff, acting *pro se*,[1] filed her Amended Complaint for alleged violations of her constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document No. 4.) In her Amended Complaint, Plaintiff names the following as Defendants: (1) Warden Rile,

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

FPC Alderson; (2) Dana Rennick, Health Administrator at FPC Alderson; and (3) Dr. Natalie Wright, Primary Provider at FPC Alderson. (Id.) Plaintiff alleges that the above Defendants are acting with deliberate indifference to her health and safety in violation of the Eighth Amendment by failing to provide adequate treatment for her severe skin disease. (Id., pp. 4 - 6.) Plaintiff explains that since 2018, Defendants Rennick and Wright have been aware of her severe skin disease and Plaintiff has sought medical help through Health Services. (Id.) Plaintiff, however, alleges that she has been denied adequate medical treatment since 2018. (Id.) Plaintiff complains that Defendant Wright initially refused Plaintiff's request to be evaluated by a dermatologist. (Id.) Instead, Plaintiff alleges that Defendant Wright ordered steroids (prednisone) as treatment. (Id.) Although Plaintiff acknowledges that the steroids provided temporarily relief of symptoms, Plaintiff states that such also caused her substantial weight gain (80 pounds) as an adverse side effect. (Id.) Plaintiff alleges that once she stopped taking the steroids, her "skin issue inflamed and infected again and at that time no new medication was ordered." (Id.) Plaintiff further complains that she was "not adequately seen by Dr. Wright as she would not see [Plaintiff] outside of a Chronic Care appointment, which occurred 2 times per year." (Id.) Plaintiff alleges that later Chronic Care appointments were not regularly conducted due to an investigation concerning Defendant Wright. (Id.) Plaintiff alleges that she continued to report to Health Services seeking treatment for her skin condition. (Id.) Plaintiff alleges that "after a few years of asking," Plaintiff was evaluated by a dermatologist. (Id.) Plaintiff states that the dermatologist prescribed medicated washes and medication, but Defendants Rennick and Wright refuse to provide those medications and washes as prescribed. (Id.) Plaintiff complains that Defendants Rennick and Wright will not follow up with the dermatologist or adhere to the dermatologist's treatment plan. (Id.) Plaintiff alleges that the only treatment provided by Defendants Rennick and Wright has been the providing

2

pads and advising her to lose weight. (Id.)

Concerning Defendant Rile, Plaintiff alleges that she has been aware of Plaintiff's severe skin condition for approximately 18 months. (Id., p. 6.) Plaintiff contends that she sent unanswered email communications to Defendant Rile, and "spoken to her directly during mainline and she refers [Plaintiff] to HSU." (Id.) Plaintiff asserts that Defendant Rile informed her that "this facility will not approve [Plaintiff's] surgery, which she misstated as a mastectomy." (Id.) Plaintiff contends that Defendant Rile told her she would "talk to HSU to get [Plaintiff] something for pain yet in the 18 months she said she would do that, HSU has never given [Plaintiff] anything to help with the pain and has no record of the Warden making contact." (Id.) Plaintiff asserts that Warden Rile has been "dismissive and flippant about [Plaintiff's] medical issues stating that this facility doesn't have to send [Plaintiff] to outside doctors and she would not approve special procedures." (Id.) As relief, Plaintiff requests placement on home confinement and monetary damages. (Id., p. 7.)

As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's Home Plan (Document No. 1-1, p. 1); (2) A copy of Plaintiff's "Inmate Request to Staff" dated December 3, 2022 (Id., p. 2); (3) A copy of Plaintiff's "FSA Recidivism Risk Assessment" (Id., p. 3); (4) A copy of Plaintiff's resume (Id., p. 4); (5) A copy of a letter of reference from Bonnie Conner, GED Teacher and College Correspondence Coordinator (Id., pp. 6 – 7); (6) A copy of a Memorandum For Chief Executive Officers dated April 13, 2021, regarding Home Confinement (Id., pp. 8 - 10); (7) A copy of "Additional Medical Information" regarding Plaintiff (Id., p. 11); (8) A copy of Plaintiff's "Request to Staff" dated November 16, 2022, regarding Plaintiff's work assignment (Id., p. 12); (9) A copy of staff's response to Plaintiff's "Request to Staff" (Id., p. 13.); and (10) A

copy of Plaintiff's pertinent medical records (Document Nos. 1-2 and 1-3).

On February 22, 2023, Plaintiff paid the filing and administrative fee totaling $402.00. (Document No. 5.) By Order entered on March 9, 2023, the undersigned directed the Clerk to issue process upon Defendants. (Document No. 7.) On May 10, 2023, Defendants filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Id., Document Nos. 16 and 19.) Specifically, Defendants request that Plaintiff's claims be dismissed based on the following: (1) Plaintiff's claims regarding conduct that occurred prior to January 25, 2021 is barred by the statute of limitations (Document No. 19, pp. 8 – 9); (2) Plaintiff failed to fully exhaust her administrative remedies (Id., pp. 9 – 10); (3) "Plaintiff's claims are not cognizable under *Bivens*" (Id., p. 10 – 25); and (4) Defendants are entitled to qualified immunity (Id., pp. 25 – 30). As Exhibits, Defendants attach the following: (1) The Declaration of Misty Shaw (Document No. 16-1, pp. 2 – 3); (2) A copy of Plaintiff's "Inmate History ADM-REL" dated May 1, 2023 (Id., p. 5); (3) A copy of Plaintiff's "Administrative Remedy Generalized Retrieval" dated March 22, 2023 (Id., pp. 7 – 8); (4) The Declaration of Caitlin Sykes (Document No. 16-2, pp. 2 – 3); (5) A copy of Program Statement 6031.04, Patient Care (Document No. 16-3); (6) A copy of Plaintiff's pertinent medical records (Document Nos. 16-4, 16-5, 16-6, 16-7, 16-8, 16-9, 16-10, 16-11, 16-12); and (7) A copy of Program Statement 6027.02, Health Care Provider Credential Verification, Privileges, and Practice Agreement Program (Document No. 16-13). Notice pursuant to Roseboro was issued to Plaintiff on May 11, 2023, advising her of the right to file a response to the Defendants' Motion. (Document No. 20.) Plaintiff, however, failed to file a Response.

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

4

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary

judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-moving movant." Wai Man Tom v. Hospitality Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020)(citations omitted.); also see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(A "material fact" is a fact that could affect the outcome of the case); CTB, Inc. v. Hog Slat, Inc., 954 F.3d 647, 658 *4th Cir. 2020)("A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict of the nonmoving party."); FDIC v. Cashion, 720 F.3d 169, 180 (4th Cir. 2013)(A "genuine issue" of material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor). "The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact." Wai Man Tom, 980 F.3d at 1037. The moving party may satisfy this burden by showing that the non-moving party has failed to prove an essential element of the non-moving party's case that the non-moving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim.). Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a

sufficient showing of facts presenting a genuine issue for trial. See Celotex Corp., 477 U.S. at 325, 106 S.Ct. 2548; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); also see Wai Man Tom, 980 F.3d at 1037(citation omitted)("[T]o survive the motion for summary judgment, [the non-moving party] may not rest on the allegations averred in his pleadings. Rather, the nonmoving party must demonstrate specific, material facts exist that give rise to a genuine issue.") Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 247-48, 106 S.Ct. 2505("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); Perry v. Kappos, 2012 WL 2130908, * 3 (4th Cir. 2012)(quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)("At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action.") All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; also see Sedar v. Reston Town Center Property, LLC, 988 F.3d 756, 763 (4th Cir. 2021)("The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [the court] to accept cherry-picked snippets of the testimony divorced from their context."). Additionally, the court is not allowed to make credibility determinations or weigh the evidence at the summary judgment stage. Stanton v. Elliott, 25 F.4th 227, 234 (4th Cir. 2022)(noting that the disbelief in a non-moving party's ability to succeed on the merits is insufficient to grant summary judgment). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate. See Moss v. Parks Corp., 985 F.2d 736, 738

(4th Cir. 1993)(Summary judgment is proper where it is apparent from the record that "no reasonable jury could find for the nonmoving party.")

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[2] The United States Supreme Court has held

---

[2] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA

that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

### A.     Failure to Exhaust:

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison

---

does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id*.

[3] 42 U.S.C. § 1997e(a) provides as follows:
>     No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims she raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing

10

numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

11

Although failure to exhaust available administrative remedies is an affirmative defense, it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921; Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to plaintiff. See Washington v. Rounds, 223 F.Supp.3d 452, 459 (D.Md. 2016)(citing Graham v. Gentry, 413 Fed.Appx. 660, 663 (4th Cir. 2011)). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel v. Hudson, 2017 WL 4004579, at * 3 (S.D.W.Va. 2017)(citing Drippe v. Tobelinski, 604 F.3d 778, 782 (3rd Cir. 2010)); Lee v. Willey, 789 F.3d 673, 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse v. Duncan, 741 Fed.Appx. 177, 178 (4th Cir. 2018)(citation omitted)("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") If a plaintiff fails to exhaust his or her administrative remedies under the PLRA, then the defendant is entitled to judgment as a matter of law. See Legg v. Adkins, 2017 WL 72604, * 2 (S.D.W.Va. Feb. 23, 2017).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, supra, 376 F.3d at 655(internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has

12

established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and

whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In her Amended Complaint, Plaintiff indicates that she did present the facts related to her claim in the prisoner grievance procedure. (Document No. 4, p. 3.) Specifically, Plaintiff states the following: "Results of level one – topical wash, but did not actually receive the wash; Result of level 2 – no response after 22 days; not able to get level 3 form." (Id.)

In their Motion, Defendants argue that Plaintiff failed to fully exhaust her administrative remedies prior to initiating the above action. (Document No. 16 and Document No. 19, pp. 9 – 10.) Defendants assert that Plaintiff filed eight administrative remedies while incarcerated at FPC Alderson. (Document No. 19, p. 9.) Defendants explain that out of those eight filings, six related to Plaintiff's medical care. (Id., p. 10.) Defendants, however, state that "none of those six remedies have been appealed to the Central Office, and two were filed subsequent to the filing of this Complaint (1144406-R1 and 114406-R2)." (Id.) Finally, Defendants note that "it is clear that the administrative remedy process was made available to Plaintiff, as evidenced by Plaintiff's eight administrative remedy submissions." (Id.) Accordingly, Defendants argue that Plaintiff's claim should be dismissed for failure to exhaust. (Id.)

In support, Defendant McGraw submits the Declaration of Ms. Misty Shaw, a Paralegal for the Mid-Atlantic Regional Consolidated Legal Center. (Document No. 16-1.) Ms. Shaw declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id.) Specifically, Ms. Shaw states as follows in her Declaration (Id., pp. 2 - 3.):

14

\*\*\*

7. A review of Plaintiff's record reveals that she has not exhausted her administrative remedies.

8. While incarcerated with the BOP, Plaintiff filed or attempted to file eight administrative remedies while incarcerated at FPC Alderson. Of those eight filings, six related to Plaintiff's medical care. However, none of those six remedies have been appealed to Central Office, and two were filed subsequent to the filing of this Complaint (1144406-R1 and 114406-R2).

\*\*\*

(Id.) Ms. Shaw attached a copy of Plaintiff's Administrative Remedy Generalized Retrieval. (Id., pp. 7 – 8.) Plaintiff failed to file a Response.

Based upon a review of the record, the undersigned finds that Defendants have met their burden proving that Plaintiff failed to exhaust her available administrative remedies prior to filing her Complaint. Plaintiff failed to file a Response disputing that she failed to properly exhaust her administrative remedies prior to filing her Complaint. As stated above, whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel, 2017 WL 4004579, at * 3; Lee, 789 F.3d at 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse, 741 Fed.Appx. at 178 ("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") In her Amended Complaint, Plaintiff indicates that the administrative process may have been unavailable. (Document No. 4, p. 3.) To establish his claim of unavailability, however, Plaintiff "must adduce facts showing that [s]he was prevented, through no fault of [her] own, from availing [herself] of that procedure." Graham, 413 Fed.Appx. at 663. In her Amended Complaint, Plaintiff states that the Regional Director failed to respond to her BP-10 and she was unable to obtain a BP-11 form. Such bare assertions without producing a scintilla of evidence is insufficient to create a genuine dispute of material fact. See Silling v. Erwin, 881 F.Supp. 236, 237 (S.D.W.Va. 1995)(a

15

party must offer more than bare allegations or conclusory statements to survive a motion for summary judgment). It is well established that a bare assertion that is unsupported by any detail will not satisfy a prisoner-plaintiff's burden of showing that remedies were unavailable. Mendez v. Breckon, 2021 WL 4268890, * 3 (W.D.Va. Sept. 20, 2021)(citation omitted); Creel, 2017 WL 4004579, at * 4 – 6 ("Unsubstantiated and conclusory assertions by an inmate that prison officials thwarted pursuit of the administrative process are insufficient to excuse failure to exhaust."); Tosado v. Gilbert, 2020 WL 6487685, * 3 – 4 (W.D.Va. Nov. 4, 2020)(stating that "numerous courts within the Fourth Circuit and elsewhere have held that 'unsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, fails to create a genuine issue of material fact sufficient to withstand summary judgment"). Plaintiff wholly fails to provide any detail to support a claim that administrative remedies were unavailable. Additionally, the mere failure of the Regional Director to respond to Plaintiff's administrative remedy requests does not render the administrative process unavailable. If the inmate does not receive a response at the expiration of the time limit at any stage of the process, the inmate may move to the next stage of the grievance process. See Veloz v. New York, 339 F.Supp.2d 505, 516 (S.D.N.Y. 2004)(finding that inmate should not be excused from exhausting where the administrative remedy procedure offers available alternative means of exhausting). Furthermore, it is undisputed that Plaintiff's underlying claim occurred between late 2018 until the filing of her Complaint on January 13, 2023. During this period of time, SENTRY records reveal that Plaintiff filed multiple administrative remedies during this period of time. (Document No. 16-1, p. 8.) Specifically, Plaintiff filed eight remedies between May 16, 2019 and February 27, 2023. (Id.)

Plaintiff's ability to file a grievance during this time period exhibits that the administrative remedy process was available to Plaintiff. See Ferguson v. Clarke, 2016 WL 398852, * 6 (W.D.Va. Jan. 6, 2016)(inmate's allegation that the administrative process was unavailable was belied by evidence that inmate submitted other grievances within the same period); Al Mujahidin v. Harouff, 2013 WL 4500446, * 7 (D.S.C. Aug. 21, 2013)(finding that inmate could not avoid summary judgment by simply asserting an unsupported allegation that his grievances were not processed or destroyed, in light of documentary evidence showing that other grievances were processed).

Finally, Plaintiff completely fails to address Defendants' failure to exhaust argument. The undersigned finds that the Plaintiff's silence on these issues can be construed as a concession to the Defendants' argument. Intercarrier Communications, LLC v. Kik Interactive, Inc., 2013 WL 4061259, at *3 (E.D. Va. Aug. 9, 2013)(citing Cureton v. U.S. Marshal Serv., 322 F. Supp. 2d 23, 27 (D.D.C. 2004)("When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the case."); also see Chamblee v. Old Dominion Sec. Co., L.L.C., 2014 WL 1415095, at *8 (E.D. Va. Apr. 10, 2014)("[Plaintiff] did not respond to the arguments made by any of the defendants with regards to Counts IX and X. As a result, [Plaintiff] abandoned these claims."). Based on the foregoing, the undersigned finds that the above action should be dismissed in view of Plaintiff's failure to exhaust her administrative remedies. Accordingly, the undersigned respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 16) be granted. The undersigned finds it unnecessary to consider the other reasons that Defendants have submitted for dismissal of Plaintiff's claim.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 16), and **REMOVE** this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: October 31, 2023.



Omar J. Aboulhosn
United States Magistrate Judge